UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAURAV TRIPATHI,<br><br>Plaintiff,<br><br>v.<br><br>ENPHASE ENERGY, INC., et al.,<br><br>Defendants. | Case No. 26-cv-01380-JST<br><br>**ORDER GRANTING MOTION TO APPOINT LEAD PLAINTIFF**<br><br>Re: ECF No. 13 |

Before the Court is Movant Heather Stith's motion to be appointed lead plaintiff in a securities class action. ECF No. 13. No other class member seeks to represent the putative class. The Court will grant the motion.[1]

I.      **BACKGROUND**

This action was filed on February 17, 2026 against Enphase Energy, Inc., Badrinarayanan Kothandaraman, and Mandy Yang ("Defendants") for violations of the Securities Exchange Act of 1934 ("the Exchange Act"). ECF No. 13 at 2. The same day, an early notice was issued advising class members of the claims, the class period, and their option to seek appointment as Lead Plaintiff. *Id*.; *see also* ECF No. 14-1.

Enphase is a "global energy technology company . . . focusing on solutions for solar generation, storage, and communication." ECF No. 1 ¶ 3. The complaint alleges that Defendants misrepresented Enphase's ability to manage its channel inventory and to mitigate the effects of the termination of a federal homeowner tax credit for clean energy installations. ECF No. 13 at 3.

---

[1] Pursuant to Civil Local Rule 7-1(b), the Court finds that this matter is appropriate for decision without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for July 9, 2026 is vacated.

After Enphase management reported "elevated channel inventory resulting in lower battery storage shipments" and negative revenue impacts from the termination of the tax credit, "Enphase stock fell $5.56 per share, or 15.15%, to close at $31.14 on October 29, 2025." *Id*.

Stith is the sole movant seeking appointment as lead plaintiff. She seeks to represent all persons other than Defendants who purchased Enphase securities between April 22, 2025 and October 28, 2025. ECF No. 13 at 2. She also seeks appointment of The Rosen Law Firm, P.A., as lead counsel for the class. *Id*.

Stith's motion was filed on April 20, 2026. ECF No. 13. Defendants filed an opposition on May 4, 2026. ECF No. 20. Stith replied on May 11, 2026. ECF No. 22. Because Stith attached a new declaration to her reply, the Court invited Defendants to file a sur-reply, ECF No. 27, which they did on June 25, 2026. ECF No. 28.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA") prescribes a three-step process for identifying a lead plaintiff in a federal securities class action. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). To begin, the first plaintiff to file an action covered by the PSLRA must post a notice publicizing the pendency of the action, the claims, and the purported class period, "in a widely circulated national business-oriented publication or wire service." *Id*. (quoting 15 U.S.C. § 78u-4(a)(3)(A)). "The notice must also state that 'any member of the purported class may move the court to serve as lead plaintiff.'" *Id*. (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)). Courts must consider any motion to serve as lead plaintiff filed by class members within 90 days of the date of publication of a notice of class action. 15 U.S.C. § 78u-4(a)(3)(B)(i).

Second, the PSLRA directs courts to adopt a "rebuttable presumption" that "the most adequate plaintiff" to serve as lead plaintiff is the "person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 729–30.  In assessing satisfaction of the requirements of Rule 23 at this stage, courts focus on typicality—the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"—and adequacy—the requirement that "the representative parties will fairly and adequately protect the interests of the class." *Id*. at 730; Fed. R. Civ. P. 23(a).  A "prima facie" showing that the movant satisfies these requirements is sufficient at the lead plaintiff stage.  *Cavanaugh*, 306 F.3d at 730–31.

"The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id*. at 730.  Specifically, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The statute also requires "[e]ach plaintiff seeking to serve as a representative party on behalf of a class" to "provide a sworn certification" (i) stating that the plaintiff has reviewed and authorized the complaint; (ii) stating that the plaintiff did not purchase the security at issue at the direction of counsel or in order to participate in suit; (iii) stating that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial; (iv) setting forth all of the plaintiff's transactions subject to the complaint during the class period; (v) identifying any other PSLRA-covered action during the preceding three years in which the plaintiff sought to represent a class; (vi) stating that the plaintiff will not accept payment beyond their pro rata share of recovery for serving as the representative party.  15 U.S.C. § 78u-4(a)(2)(A).

## IV.   DISCUSSION

Stith's motion was timely, satisfies the certification requirement, and is not contested by any other class member.  Defendants argue, however, that she has not made the prima facie showing of adequacy required at step two because her claimed loss is too small and there are no other indicia of adequacy.  Stith responds that Defendants lack standing to oppose her motion and

that she has established adequacy in any case.

### A.     Defendants' Standing

The PSLRA requires courts to "consider any motion made *by a purported class member*" in determining the adequacy of a proposed lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i) (emphasis added). In addition, the presumption assumed at step two "may be rebutted only upon proof *by a member of the purported plaintiff class* that the presumptively most adequate plaintiff" fails to meet certain conditions. *Id*. § 78u–4(a)(3)(B)(iii)(II) (emphasis added). On the basis of this language, courts in this circuit conclude that defendants lack standing to challenge the appropriateness of a proposed lead plaintiff. *See Olsson v. PLDT Inc.*, No. 23-CV—00885-CJC(MAAX), 2023 WL 3139912, at *3 (C.D. Cal. Apr. 26, 2023) (holding that the defendant "lacks standing to object to the proposed lead plaintiffs' adequacy or typicality at this stage"); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999) ("Thus, defendants lack standing to object to the adequacy or typicality of the proposed lead plaintiffs at this stage of the litigation."); *see also Gluck v. CellStar Corp.*, 976 F.Supp 542, 550 (N.D. Tex. 1997) ("The statute is clear that only potential plaintiffs may be heard regarding appointment of a lead plaintiff.").

The Eastern District of New York discussed the matter persuasively in *Yang v. Trust for Advised Portfolios*, No. 21-cv-1047 (FB) (MMH), 2022 WL 970772, at *7–8 (E.D.N.Y. Mar. 31, 2022). That court acknowledged the "good reasons" motivating some district courts in the Second Circuit to find that defendants have standing to oppose a motion to appoint a lead plaintiff. Id. at *8. Those good reasons include (1) the absence of PSLRA language suggesting the application for appointment of a lead plaintiff is made ex parte and (2) the potential that allowing defendants to challenge a motion for appointment furthers "the goal of alleviating the abuses of the class action device in securities litigation." *Id*. (citations omitted). The *Yang* court nonetheless followed the Third Circuit and "numerous district courts" from around the country to conclude to the contrary because the statute "makes clear that *class members*, not defendants, may rebut the presumption." *Id*. at *7–8.

Defendants, for their part, cite *Tai Jan Bao v. SolarCity Corp.*, which noted that "[w]hile

4

Defendants are precluded from adducing evidence to *rebut* a presumption that he is the most adequate plaintiff, as the PSLRA designates that function to the other *plaintiffs* vying to be lead, the Court is persuaded that nothing in the PSLRA prevents Defendants from directing the Court's attention to mistakes or discrepancies in Webb's motion when deciding whether Webb is entitled to the statutory presumption in the first instance." No. 14-CV-01435-BLF, 2014 WL 3945879, at *2 (N.D. Cal. Aug. 11, 2014) (emphasis in original). But Defendants do not identify a mistake or discrepancy in Stith's motion. Rather, they argue that she fails to demonstrate adequacy. The Court therefore is not persuaded that Defendants have standing to oppose a motion to appoint a lead plaintiff in a PSLRA action.

Nonetheless, the Court must satisfy itself that the statutory requirements are met, including with respect to the arguments Defendants raise here. *See, e.g., Takeda*, 67 F. Supp. 2d at 1138 (although concluding that the defendants lacked standing to oppose a lead plaintiff motion, raising sua sponte and addressing "certain of the concerns addressed in defendants' statement"); *see also Tai Jan Bao*, 2014 WL 3945879, at *2 ("The Court has an independent obligation to ensure that the class is represented by an adequate lead plaintiff, and will certainly not disregard evidence suggesting that a movant is not presumptively adequate.").

### B.    Largest Financial Interest

To determine which movant has the largest financial interest, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit" through "accounting methods that are both rationally and consistently applied." *Cavanaugh*, 306 F.3d at 730, 730 n.4. Like many district courts around the country, courts in this district consider the "Olsten-Lax" factors to determine who has the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *See Richardson v. TVIA, Inc.*, No. 06-CV-06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

Stith purchased 16 shares during the class period, for a total of $571.42, with losses

United States District Court
Northern District of California

United States District Court
Northern District of California

equaling $58.40.  ECF No. 14-3 at 2.  Where a proposed lead plaintiff is the sole movant, however, she satisfies the largest financial interest requirement regardless of the size of her loss. *See Ziegler v. GW Pharms., PLC*, No. 21-CV-01019-BAS-MSB, 2022 WL 174014, at *2 (S.D. Cal. Jan. 18, 2022) ("Where, as here, the movants are the sole parties seeking to be appointed as Lead Plaintiffs, they are entitled to the presumption that they hold the largest financial interest." (citation modified)); *Feola v. Cameron*, No. LA CV15-01654 JAK (AJWX), 2015 WL 14116642, at *2 (C.D. Cal. July 7, 2015) ("Because no other party has moved to be named Lead Plaintiff, Karsan Group has sufficiently demonstrated that it is 'the one who has the largest financial interest.'").  Stith has established that she has the largest financial interest of any proposed lead plaintiff.

### C.    Typicality

"The test for typicality asks whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Xu v. FibroGen, Inc.*, No. 21-CV-02623-EMC, 2021 WL 3861454, at *7 (N.D. Cal. Aug. 30, 2021) (quoting *Melucci v. Corcept Therapeutics Inc.*, No. 19-CV-01372-LHK, 2019 WL 4933611, at *4 (N.D. Cal. Oct. 7, 2019)).  A plaintiff is typical if their claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (citations omitted).

That Stith's claims are typical of the class is uncontested.  Her claims share substantially similar questions of law and fact with other class members because she, like other members, alleges "that Defendants violated the Exchange Act by publicly disseminating false and misleading statements about Enphase and its business" and that she was damaged when she "purchased the Company's securities at prices artificially inflated due to Defendants' misrepresentations and omissions." ECF No. 13 at 5.  The Court finds that Stith has made the necessary prima facie showing of typicality.

### D.    Adequacy

In the Ninth Circuit, "[c]ourts determine whether a plaintiff will adequately represent a

class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *In re Mersho*, 6 F.4th 891, 899–900 (9th Cir. 2021) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)). Here, Defendants do not identify any conflicts of interest between Stith and other class members, nor is the Court aware of any. ECF No. 13 at 6. Defendants, however, raise two arguments arguably bearing on the second adequacy prong: that Stith's financial interest is too small to sufficiently incentivize her to supervise counsel, and that she has not demonstrated the experience necessary to prosecute the action vigorously. Addressing each argument in turn, the Court concludes that Stith is an adequate lead plaintiff.

### 1.      Size of Financial Interest

The PSLRA provided "new procedures for the appointment of lead plaintiffs and lead counsel" which "aimed to increase the likelihood that institutional investors—parties more likely to balance the interests of the class with the long-term interests of the company—would serve as lead plaintiffs." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320–21 (2007). Defendants argue that a similar logic counsels in favor of rejecting Stith's motion to serve as lead plaintiff, despite the absence of other movants. ECF No. 20 at 2. They cite three cases, all from districts in the Second Circuit, that have rejected proposed lead plaintiffs because their losses were insufficient to establish adequacy of representation under Rule 23, even where no other plaintiff moved for consideration. As set forth below, the Court is not persuaded by this authority.

In *McCormack v. Dingdong (Cayman) Ltd.*, the first of Defendants' three favored cases, the Southern District of New York rejected sua sponte an unopposed proposed lead plaintiff with $504.40 in alleged losses. No. 22-CV-7273 (VSB), 2022 WL 17336586, at *5 (S.D.N.Y. Nov. 30, 2022). First, his losses were a "token amount" and were not "similar to, or larger than, the losses of other class members." *Id.* "Additionally, McCormack has submitted only a pro forma certification that includes no details about his background, years of investing experience, or other indicia of sophistication"—information necessary to establishing his adequacy under Rule 23. *Id.* "For these reasons, McCormack . . . 'failed to persuade this Court that [he has] sufficient interest

in the litigation to vigorously pursue the class claims and adequately represent the interests of class members.'" *Id*.

In *Bosch v. Credit Suisse Grp. AG*, cited in *McCormack*, the Eastern District of New York likewise rejected a proposed lead plaintiff on adequacy grounds despite the lack of other movants. No. 22-cv-2477 (ENV), 2022 WL 4285377, at *4 (E.D.N.Y. Sept. 12, 2022). The plaintiff, whose alleged losses were $621, "lack[ed] a sufficient financial interest in the outcome of the case to incentivize him to monitor counsel's performance and control the litigation on behalf of the putative class." *Id*. at *4–5. In reaching this conclusion, the court considered possible "tension" resulting from the fact that lead counsel would have a substantially greater financial stake in the litigation than the lead plaintiff. *Id*. at *5. The court also noted that the plaintiff had already demonstrated an inability to effectively manage counsel because, in response to a court order that he file his retainer agreement, he filed a retainer bearing the same date as the court's order "with a fee provision strongly favoring counsel over the putative class." *Id*. at *5.

Defendants also cite *Guo v. Tyson Foods*, in which the Rosen Law Firm proposed to represent two plaintiffs who would lead the class jointly—one with a claimed loss of $156.25 and another with a claimed loss of $166.95, for a total of $323.20. No. 21-CV-00552-AMD-JRC, 2022 WL 5041798, at *4 (E.D.N.Y. Sept. 30, 2022). The court found that "[b]ased on these nominal losses," the plaintiffs lacked sufficient financial incentives to adequately monitor counsel's performance and control the litigation. *Id*. at *5 (citing *Bosch*, 2022 WL 4285377, at *4). The *Guo* court, like the court in *Bosch*, emphasized the PSLRA's intent to avoid named representatives with "a minimal financial stake in the case" who "acts primarily as a tool of the lawyers who may well have recruited him." *Id*. at *5 (quoting *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 n.8 (E.D.N.Y. 2011)). While *McCormack* and *Bosch* therefore found the proposed lead plaintiff inadequate on multiple grounds, *Guo* did so based on the size of the alleged losses alone.

Other decisions from within the Second Circuit, however, have found that small total stakes do not alone disqualify a plaintiff. For instance, in *Nayani v. LifeStance Health Grp., Inc.*, the court found a proposed lead plaintiff adequate who (1) selected as counsel a "well-known

player" in securities class actions; (2) has no relationship with the defendants except as a shareholder; (3) demonstrated a willingness and ability to supervise counsel, as someone with experience managing attorneys and who successfully negotiated the fee and working arrangement with his chosen counsel; and (4) has shown an active interest in the case, "meeting with attorneys on a weekly basis to discuss the matter." 641 F. Supp. 3d 57, 64 (S.D.N.Y. 2022).

The court rejected the defendant's argument that the movant's "modest" loss of $385 rendered him inadequate as "at odds with both the text and the purpose of PSLRA, not to mention one of the main purposes of aggregate litigation itself." *Id*. "The PSRLA's lead plaintiff provisions do not erect a barrier that prevents any plaintiff with a small stake from representing a class." *Id*. "Instead, the PSLRA responded to a particular problem with a precise solution": namely, the problem of "the 'race to the courthouse,' in which the first plaintiff to file (typically, a law firm's hapless recruit) would represent the class by default," resulting in litigation practices benefiting the attorneys more than "the shareholders ostensibly represented." *Id*. at 64–65. The PSLRA addressed this problem "by establishing a competitive process that a qualified, motivated entrant—perhaps even one with a small personal stake—might win." *Id*. Moreover, "[d]eclining to appoint a movant as lead plaintiff simply because he has little at stake would also be inconsistent with a key purpose of aggregate litigation . . . to bring justice to individual plaintiffs who have meritorious claims but relatively little at stake." *Id*.

Courts within this district readily reject the theory that small losses can alone render a proposed lead plaintiff inadequate. In *Houghton v. Leshner*, the defendants raised the same argument defendants raise here, based on the same three cases—*McCormack*, *Guo*, and *Bosch*. No. 22-CV-07781-WHO, 2023 WL 2485785, at *2 (N.D. Cal. Mar. 13, 2023). Citing *Nayani*, that court found "that the Plaintiffs are not disqualified by the small size of their alleged losses" even though the proposed lead plaintiffs' combined spend on the cryptocurrency asset at issue was only $80. *Id*. at *1–2. The plaintiffs had sufficiently shown why "institutional or other large investors are unlikely to step forward in this case" and the plaintiffs otherwise nominally satisfied Rule 23's typicality and adequacy requirements. *Id*. at *2.

Other courts in this circuit have routinely allowed plaintiffs with very small losses to serve

9

as lead plaintiff where no other plaintiff has come forward with greater losses, albeit without discussing the argument presented in *McCormack*, *Guo*, and *Bosch*. *See, e.g.*, *Stein v. Bridgepoint Educ., Inc.*, No. 19CV460-WQH-MSB, 2019 WL 3532293, at *3 (S.D. Cal. Aug. 2, 2019) (approving an unopposed motion to be appointed lead plaintiff by a movant claiming $28 in losses); *Cai v. Visa Inc.*, No. 5:24-cv-08220-NW, Dkt. No. 31, at 2-4 (N.D. Cal.) (same, with respect to a movant claiming $86 in losses); *Olsson*, 2023 WL 3139912, at *3 (approving a lead plaintiff with claimed losses of $240.23 and noting that "courts routinely appoint lead plaintiffs with financial interests substantially similar to or less than" the plaintiff).

Stith also raises several administrability issues that concern the Court. As Stith argues, defendants' proposed rule barring some movants from serving as lead plaintiff based on the size of their claimed losses would require a court to "delve into an individual's net worth or current financial condition to determine if a loss is sufficient to incentivize the movant." ECF No. 22 at 4. Any such rule would presumably also have to be adjusted for smaller cases resulting in smaller damages, lest it effectively eliminate certain small securities class actions. *Id*. at 21.

Ultimately, Congress declined to impose minimum loss requirements for lead plaintiffs in passing the PSLRA. This Court will not presume to do so now.

### 2.    Other Indicia of Adequacy

"The district court has latitude as to what information it will consider in determining typicality and adequacy." *Mersho*, 6 F.4th at 900 (quoting *Cavanaugh*, 306 F.3d at 730). And "[a]s the Ninth Circuit made clear, courts assess a potential lead plaintiff's prima facie case through that plaintiff's declarations and pleadings." *Averza v. Super Micro Computer, Inc.*, No. 5:24-CV-06147-EJD, 2024 WL 5112222, at *3 (N.D. Cal. Dec. 12, 2024) (citing *Cavanaugh*, 306 F.3d at 730).

In their opposition to Stith's motion to be appointed lead plaintiff, Defendants assert that Stith "provides no explanation of her background, experience with investing, or any other indicia of reliability or adequacy to lead this litigation," so she is "not an appropriate party to be appointed lead plaintiff under the PSLRA." ECF No. 20 at 2–3. Defendants mischaracterize Stith's motion, which does explain her background and experience with investing. ECF No. 13 at 6 (stating that

Stith is an assistant branch manager at a credit union who has a bachelor's degree in International Business and has been investing since 2021). Stith's motion also states that she "has researched and retained competent and experienced counsel concerning this case" and that she is "extremely motivated to pursue claims" because of the losses she sustained. *Id*.

Defendants cite *McCormack*, which indeed faulted a proposed lead plaintiff for "submit[ing] only a pro forma certification that includes no details about his background, years of investing experience, or other indicia of sophistication." ECF No. 20 at 5 (citing 2022 WL 17336586, at *5). Other courts have not required inquiry into the personal and professional backgrounds of a proposed lead plaintiff. *See Kasilingam v. Tilray, Inc.*, No. 1:20-CV-03459-PAC, 2020 WL 4530357, at *3 (S.D.N.Y. Aug. 6, 2020) (finding that the Court is not required to "peer into" questions of personal background including business and investment experience "where it otherwise finds adequacy"). Regardless of whether the information was necessary, however, Stith did include in her moving papers details about her "background, years of investing experience, [and] other indicia of sophistication." In the absence of any specific argument that Stith's experience renders her inadequate to represent the class, the Court concludes that she has made the requisite prima facie showing.

Defendants also complain that Stith's PSLRA certification is "a standard form" that is "unspecific to Stith" and "says nothing about Stith's background or investing experience, and it does not mention any fact suggesting Stith understands the responsibilities required of a lead plaintiff in a securities litigation." ECF No. 20 at 5. But the contents of a PSLRA certification are specifically enumerated by the statute, which does not require movants to set forth their background, experience, or detailed understanding of a lead plaintiff's responsibilities. *See* 15 U.S.C. § 78u-4(a)(2)(A). Stith's PSLRA certification complies with the statutory requirements. ECF No. 14-2.

Stith also appended to her reply a declaration intended to bolster her showing of adequacy. ECF No. 22-1. In addition to swearing to the facts stated in the motion and reaffirming her desire to serve as lead plaintiff, she declares that "[w]hile [her] loss may be small, [she is] committed to prosecute this case to seek justice" because she believes that "access to the courts should not be

11

reserved only for the wealthy" and "that class members, whether they suffered sizeable losses or modest ones, deserve to be represented in this securities fraud class action." *Id*. ¶ 4.  Stith declares that she intends to "direct the litigation on behalf of the class and stay apprised of all material developments . . . by holding meetings as needed with" her attorneys "to receive updates about any developments in the case, and provide input, on behalf of the class, concerning the theories of liability and damages." *Id*. ¶ 6.

In the surreply invited by this Court, the defendants argue that the reply declaration "does not demonstrate why or how Stith would direct this litigation, providing no more than generic and conclusory remarks related to her involvement" and saying nothing "concrete about Stith's actual engagement with or control over this case." ECF No. 28 at 2–3.

Courts will not normally consider arguments or evidence raised for the first time in reply. *See Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).  Having solicited a surreply, however, the Court considers both the reply and the surreply and concludes that Stith's new evidence, while not necessary to establishing adequacy, bolsters her position.  It establishes a strong ideological incentive to "prosecute the action vigorously on behalf of the class," *Mersho*, 6 F.4th at 899–900, and evinces her willingness to supervise counsel through regular meetings.  Defendants demand for a more "concrete" statement of Stith's "engagement with or control over this case" is unreasonable at this stage.  For the reasons stated above, the Court concludes that Stith has established her adequacy to serve as lead plaintiff.

### E.    Approval of Lead Counsel

The PSLRA provides that once the court has designated a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "While the PSLRA requires the court to affirmatively approve the plaintiff's choice of counsel, it also 'clearly leaves the choice of class counsel in the hands of the lead plaintiff.'" *Xu*, 2021 WL 3861454, at *11 (quoting *Cavanaugh*, 306 F.3d at 734).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir.

United States District Court
Northern District of California

2009); *see also Cavanaugh*, 306 F.3d at 733 (stating that courts may only disturb the lead plaintiff's choice of counsel if it is "so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff").

The Court finds that the Rosen Law Firm is fit to serve as lead counsel in this case. The firm "has been actively researching the . . . claims," "is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in numerous courts throughout the nation," "has prosecuted securities fraud class actions and other complex litigation," and "has obtained substantial recoveries on behalf of investors." ECF No. 13 at 7; ECF No. 14-4; *see Olsson*, 2023 WL 3139912, at *3 (approving lead counsel who "successfully served as counsel in many other securities class actions and [whose] attorneys have extensive experience in handling large, complex litigation").

## CONCLUSION

For the foregoing reasons, Stith's motion for appointment as lead plaintiff and approval of lead counsel for this putative class action is **GRANTED.**

**IT IS SO ORDERED.**

Dated: July 7, 2026

_____
JON S. TIGAR
United States District Judge

*United States District Court*
*Northern District of California*