LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
*colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.5400

Daniel R. Gherardi (Bar No. 317771)
*daniel.gherardi@lw.com*
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
Telephone: +1.650.328.4600

*Attorneys for Defendants Enphase Energy, Inc., Badrinarayanan Kothandaraman, and Mandy Yang*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| GAURAV TRIPATHI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN, and MANDY YANG,<br><br>Defendants. | Case No. 4:26-cv-01380-JST<br><br>**DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing: March 18, 2027<br>Time: 2:00 p.m.<br>Location: Courtroom 6 – 2nd Floor (via Zoom)<br><br>Hon. Jon S. Tigar |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 18, 2027 at 2:00 p.m., or as soon thereafter as the parties may be heard, before the Honorable Jon S. Tigar, District Court Judge, United States District Court for the Northern District of California, in the Oakland Courthouse, Courtroom 6, 1301 Clay Street, Oakland, CA 94612, Defendants Enphase Energy, Inc., Badrinarayanan Kothandaraman, and Mandy Yang (collectively, "Defendants") will and hereby do move for an order dismissing Lead Plaintiff Heather Stith's ("Plaintiff") Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 34, the "Amended Complaint"). This motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, and on the grounds that Plaintiff fails to state a claim upon which relief can be granted. Plaintiff fails to allege particularized facts establishing (1) any false statements or omissions under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), (2) that any of the statements challenged were made with scienter, and (3) loss causation. Each is an independent basis for dismissal. Because Plaintiff fails to state a Section 10(b) claim and does not allege particularized facts supporting control person liability, her claims under Section 20(a) of the Exchange Act also fail.

Defendants' motion is based on this Notice of Motion and Motion to Dismiss, the following Memorandum of Points and Authorities, Defendants' concurrently submitted Request for Consideration and Declaration of Daniel R. Gherardi, the complete files and records in this action, and any additional material and arguments as may be considered by the Court in connection with the hearing on the motion. Through this motion, Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Amended Complaint with prejudice for failure to state a claim upon which relief can be granted.

## ISSUE TO BE DECIDED

1. Whether the Court should dismiss the Amended Complaint for failure to state a claim upon which relief can be granted for violation of Sections 10(b) and 20(a) of the Exchange Act, including for failure to adequately plead falsity, scienter, and loss causation?

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Enphase Provides Solar Solutions to Residential and Commercial Customers ..... 1

B. Enphase Updated Investors About Macroeconomic Trends and Competition ..... 2

C. Enphase Reports Strong Financial Results Throughout the Class Period While Warning of Potential Risks ..... 3

D. Enphase Updates Investors About a Potential Go-Forward Demand Decline Due to the Expiration of Tax Credits ..... 4

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiff Fails to Plead That Any Challenged Statement Was False or Misleading ..... 5

1. Plaintiff Fails to Plead Contemporaneous Falsity ..... 6

2. Nearly All of the Challenged Statements Are Inactionable Opinions ..... 10

3. Plaintiff's Challenge to Forward-Looking Statements Fails ..... 11

B. Plaintiff Fails to Plead Any Inference of Scienter, Much Less the Requisite Strong Inference ..... 11

1. Plaintiff Alleges No Motive for Any Defendant to Deceive Investors ..... 12

2. Plaintiff's Circumstantial Allegations Do Not Support Scienter Either ..... 12

3. No Scienter for Ms. Yang ..... 13

4. The Nonfraudulent Inference Is Far More Compelling ..... 14

C. Plaintiff Fails to Plead Loss Causation ..... 14

D. Plaintiff Fails to Plead a Section 20(a) Claim ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) .......... 8, 12

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) .......... 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .......... 10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012). .......... 15

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) .......... 14

*Fialkov v. Microsoft Corp.*,
72 F. Supp. 3d 1220 (W.D. Wash. 2014), *aff'd*, 692 F. App'x 491 (9th Cir. 2017) .......... 8

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .......... 13

*Hadian v. Fate Therapeutics, Inc.*,
2025 WL 2696995 (S.D. Cal. Sept. 22, 2025) .......... 5, 14

*Hansainvest Hanseatische Inv.-GMBH v. Enphase Energy, Inc.*,
2026 WL 2908618 (N.D. Cal. Sept. 28, 2026) .......... 7, 9, 10

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .......... 11, 15

*In re Fastly, Inc. Sec. Litig.*,
2021 WL 5494249 (N.D. Cal. Nov. 23, 2021). .......... 9, 11

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) .......... 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .......... 5, 12

*In re Palo Alto Networks, Inc. Sec. Litig.*,
2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) .......... 7

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .......... 4, 8

*In re SolarCity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) .......... 12, 13

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........ 11

*In re Yahoo! Inc. Sec. Litig.*,
2012 WL 3282819 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015) ........ 9

*In re Zumiez Inc. Sec. Litig.*,
2009 WL 901934 (W.D. Wash. Mar. 30, 2009) ........ 7

*Lamontagne v. Tesla, Inc.*,
2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ........ 9

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ........ 11, 13

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ........ 15

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021) ........ 8

*Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ........ 6

*Macquarie Infrastructure Corp. v. Moab Partners*, L.P.,
601 U.S. 257 (2024) ........ 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........ 12, 13, 15

*Ng v. Berkeley Lights, Inc.*,
2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ........ 15

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ........ 5, 12, 14

*Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla, Inc.*,
2025 WL 3459471 (9th Cir. Dec. 2, 2025) ........ 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ........ 10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ........ 5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........ 7, 8

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ........ 5, 12, 13

*Scheller v. Nutanix, Inc.*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) ........ 7, 13

*Sneed v. Talphera, Inc.*,
147 F.4th 1123 (9th Cir. 2025) ........ 5, 14

*Waterford Twp. Police v. Mattel, Inc.*,
321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669 (9th Cir. 2020) ........ 8, 10

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ........ 13

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ........ 6, 7, 11, 14

## STATUTES

15 U.S.C. § 78u-4(b)(1)(B) ........ 5, 6

15 U.S.C. § 78u-4(b)(2)(A) ........ 5, 11

# GLOSSARY

| Term | Definition |
|---|---|
| ¶ _ | Citations to paragraph numbers in the Amended Complaint |
| 25D tax credit | A federal tax credit under Section 25D of the Internal Revenue Code for homeowners who bought residential solar and storage systems, which expired on December 31, 2025 |
| Amended Complaint | Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws, filed September 8, 2026, Dkt. No. 34 |
| Appendix A | Appendix A hereto, listing in tabular and numbered format the statements challenged by Plaintiff in the Amended Complaint |
| CEO | Chief Executive Officer |
| CFO | Chief Financial Officer |
| Class Period | February 4, 2025 through October 28, 2025 |
| Defendant(s) | Enphase, Badrinarayanan Kothandaraman, and Mandy Yang |
| Enphase or the Company | Enphase Energy, Inc. |
| Ex(s) _ | Exhibits attached to the Declaration of Daniel R. Gherardi in Support of Defendants' Motion to Dismiss Lead Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws |
| FE1 | The purported former Enphase employee alleged in the Amended Complaint at ¶¶ 59-66 |
| NEM 2.0 or NEM 3.0 | Versions of a "Net Energy Metering" solar billing policy that credits homeowners for excess electricity their solar panels send to the electric grid |
| Plaintiff or Lead Plaintiff | Heather Stith |
| PSLRA | The Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq.* |
| PW3 | Powerwall 3, a Tesla product that Plaintiff alleges competed with Enphase's products |
| SEC | United States Securities and Exchange Commission |
| Section 10(b) | Section 10(b) of the Securities Exchange Act of 1934 |
| Section 20(a) | Section 20(a) of the Securities Exchange Act of 1934 |
| Stmts. | Statements challenged by Plaintiff, as detailed and numbered in Appendix A |
| Tesla | Tesla, Inc. |
| Q_ 2024 or Q_ 2025 | Enphase's numbered fiscal quarters for the applicable fiscal year, aligned with the calendar year |

## I. INTRODUCTION

Plaintiff's Amended Complaint begins from a decline in Enphase's stock price and reverse engineers a theory of fraud from a series of unrelated public statements. The original complaint claimed Defendants misled investors about the potential impact of expiring federal tax credits, causing an October 29, 2025 stock decline when Enphase projected lower revenue due to that expiration. Now, Plaintiff points to that same stock price decline but claims the tax-credit expiration discussion somehow revealed that statements about publicly disclosed competition from Tesla and channel inventory levels were misleading. This shoot-first-ask-questions-later approach to pleading fraud by hindsight fails.

In reality, Enphase disclosed accurate financial results each quarter, reported channel inventory against its same longstanding eight-to-ten week benchmark, disclosed its main competitors (including Tesla), and *met its previously issued guidance*. Plaintiff claims Enphase should have used a different inventory benchmark and concealed competition from Tesla, but does not explain what inventory levels should have been or why, and offers only a single low-level former employee's account that Tesla's product made it "difficult" for Enphase's batteries to compete in Florida. That is far from sufficient. Plaintiff's subjective disagreement and unsupported supposition fall far short of stating a claim for securities fraud.

Plaintiff's challenges fail for a number of other reasons as well, including that the statements Plaintiff challenges are largely inactionable statements of opinion, Plaintiff fails to adequately plead an intent to deceive investors, and the financial results disclosed in October 2025 did not reveal any undisclosed "truth" of any challenged statement. The claims against Ms. Yang should also be dismissed with prejudice. Plaintiff mentions her only to name her as a defendant and include her in defined terms, ¶¶ 15, 16, and challenges no statement by her.

## II. BACKGROUND

### A. Enphase Provides Solar Solutions to Residential and Commercial Customers

Enphase designs, manufactures, and sells an integrated solar energy platform, including microinverters, batteries, and electric vehicle chargers, for residential and commercial use. ¶¶ 18-

19; Ex. 1 at 7.[1] Badrinarayanan Kothandaraman serves as Enphase's President and CEO, and Mandy Yang serves as its CFO and Executive Vice President. ¶¶ 14-15.

Enphase primarily sells to distributors (rather than end-users) who then bundle Enphase's products and sell to installers and end users. ¶¶ 20, 22; Ex. 1 at 7, 10. Enphase reports both "sell-in" (its direct sales to distributors) and "sell-through" sales (a measure of end-customer demand reflecting sales to installers and users). ¶ 24; Ex. 1 at 35; Ex. 12 at 4, 25-26; Ex. 14 at 13. "Channel inventory" refers to products sold to distributors that have not yet been deployed to end users. ¶ 24. Enphase reports inventory in weeks-on-hand (inventory divided by the prior quarter's sell-through), so the same inventory represents fewer weeks when demand is high and more weeks when demand is low. ¶ 90; Ex. 9 at 28. Before, during, and after the Class Period, Enphase disclosed it seeks to keep channel inventory within approximately eight to ten weeks. ¶¶ 4-5, 33, 90, 101; Ex. 10 at 12; Ex. 12 at 25; Ex. 13 at 15; Ex. 14 at 13. Enphase also warned that it has "limited visibility as to end-customer demand" and, if it overestimates demand, "may have excess inventory that [it] cannot sell," while if it underestimates demand, it "may not have sufficient inventory to meet end-customer demand." Ex. 1 at 35.

### B. Enphase Updated Investors About Macroeconomic Trends and Competition

Enphase kept investors informed about the macroeconomic headwinds facing the solar industry and the Company, including the broad-based slowdown in demand that began in the second quarter of 2023. ¶ 75; Ex. 1 at 49. In the United States, Enphase discussed that the slowdown was driven primarily by high interest rates, high channel inventory, and California's "transition from NEM 2.0 to NEM 3.0." ¶¶ 75, 77; Ex. 1 at 14, 49-50. In February 2025, Enphase disclosed channel inventory rose above its eight-to-ten week "normal" target in late 2023 and the first half of 2024, that it sold fewer microinverters in 2024 "to normalize channel inventory," and that by the start of 2025 it had succeeded in "bringing down channel inventory to normalized levels." ¶¶ 69, 71, 75, 77, 82; Ex. 1 at 49-50, 53; Ex. 8 at 5, 8; Ex. 11 at 3, 9; Ex. 10 at 12.

Enphase also disclosed its main competitors in each sector of its business, including Tesla in inverters, storage, and vehicle chargers. ¶¶ 44-46, 79, 92, 103; Ex. 1 at 11, 19; Ex. 2 at 39; Ex.

[1] Unless otherwise noted, emphasis, internal quotation marks, and citations are omitted.

3 at 43. It also warned that competitors offering "aggressive or below-market pricing" "could cause us to lose sales or market share," and that technological change could result in "decreased revenue and a loss of market share to competitors." ¶¶ 44-46, 79; Ex. 1 at 19.

The market knew of this competition. Before the Class Period, an analyst observed that Tesla's "Powerwall 3 demand is substantial and widespread," and that "many of your customers are ramping up substantial Powerwall 3 volumes." ¶ 53; Ex. 10 at 21. Mr. Kothandaraman responded that Enphase's data showed it was holding share. ¶¶ 53-54; Ex. 10 at 21-22. On a subsequent earnings call, when another analyst cited data suggesting PW3 was gaining share in California, Mr. Kothandaraman declined to "comment on competition" and described features differentiating Enphase's products from its competitors. ¶¶ 55, 73; Ex. 11 at 29-31.

### C. Enphase Reports Strong Financial Results Throughout the Class Period While Warning of Potential Risks

Throughout the Class Period, Enphase's revenues grew and met or exceeded guidance each quarter, reaching $410.4 million in the third quarter of 2025, Enphase's highest revenue in two years. Ex. 2 at 31; Ex. 7 at 1. Each quarter, Enphase disclosed that channel inventory remained in the eight-to-ten week "normal" range, or just "slightly" above it for certain products. ¶¶ 69, 86, 95, 106. And Enphase warned that competition could cause it to "lose sales or market share" and that if it did "not forecast demand for [its] products accurately," it could "experience . . . excess product inventory." ¶¶ 41, 46, 79; Ex. 1 at 6, 19, 35. Enphase further warned that, because it sells "most of [its] products to distributors," it has "limited visibility as to end-customer demand" and "may have excess inventory that [it] cannot sell" if it "overestimate[s] demand"; that its distributors "also use or market and sell products from [its] competitors" and "may focus their marketing and sales efforts on products of [its] competitors"; and that competitors may "lower prices of their products to try to win market share." Ex. 1 at 21, 35.

| | Q4 2024 | Q1 2025 | Q2 2025 | Q3 2025 |
|---|---|---|---|---|
| **Guidance Issued** | $360-400 million | $340-380 million | $340-380 million | $330-370 million |
| **Actual Revenue (year-over-year increase)** | $382.7 million (26.5%) | $356.1 million (35.2%) | $363.2 million (19.7%) | $410.4 million (7.8%) |

| | | | | |
|---|---|---|---|---|
| **Met or Exceeded Guidance?** | ☑ | ☑ | ☑ | ☑ |
| **Channel Inventory Disclosure** | Overall: “normal” | Batteries: “normal”<br><br>Microinverters: “a little elevated” | Batteries: “normal”<br><br>Microinverters: “slightly elevated” | Batteries: “slightly elevated”<br><br>Microinverters: “normal” |

### D. Enphase Updates Investors About a Potential Go-Forward Demand Decline Due to the Expiration of Tax Credits

On October 28, 2025, Enphase announced third-quarter 2025 revenue of $410.4 million, exceeding guidance, with sell-through “up 9% in Q3 as compared to Q2,” microinverter channel inventory that had “returned to normal,” and battery channel inventory “slightly elevated due to sell-in of our new fourth-generation battery.” ¶¶ 105-06; Ex. 7 at 1; Ex. 14 at 3-4. Enphase predicted a “further ramp in the U.S. demand in Q4, primarily due to homeowners moving to capture the expiring 25D tax credit[2] before the end of this year,” with U.S. sell-through in the first three weeks of October already “up over 20% compared to the Q3 average.” Ex. 14 at 6.

Enphase also warned of “a larger-than-normal seasonal decline following the expiration of [the] 25D tax credit,” at the end of 2025, and it estimated first quarter 2026 revenue of $250 million. Ex. 14 at 7. To prepare, Enphase announced it would be “reducing shipments of product to the channel,” while confirming that the company continued to target “8 to 10 weeks” of channel inventory. ¶¶ 105-06; Ex. 14 at 6, 13. Enphase’s stock price fell approximately 15% the next day, and this lawsuit followed. ¶ 108.

## III. LEGAL STANDARD

To state a Section 10(b) securities fraud claim, Plaintiff must plead with particularity that a defendant made a (1) misrepresentation or omission of material fact (2) with scienter (3) that caused the plaintiff’s economic losses. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Plaintiff must also satisfy the “heightened pleading requirements” of Rule 9(b)

---

[2] Section 25D of the Internal Revenue Code gave homeowners who bought residential solar and storage systems with cash or loans a federal income tax credit. Ex. 1 at 14; Ex. 3 at 31. In July 2025, Congress set the Section 25D tax credit to expire on December 31, 2025. Ex. 3 at 26, 31.

and the PSLRA, which apply to "all elements of a securities fraud action," *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014), and "present[] no small hurdle," *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).

Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and "state with particularity all facts" supporting that theory. 15 U.S.C. § 78u-4(b)(1)(B). And Plaintiff must plead particularized facts giving rise to a strong inference of scienter, either that Defendants acted with an "intent to deceive, manipulate, or defraud" or with deliberate recklessness, which is "actually much closer to … intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014); 15 U.S.C. § 78u–4(b)(2)(A). The PSLRA establishes a "comparative inquiry" at the pleading stage that requires weighing the plausibility of Plaintiff's fraud theory against innocent explanations for the conduct alleged. *Tellabs*, 551 U.S. at 323-24. Absent motive, Plaintiff must plead "compelling and particularized facts showing fraudulent intent or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). And demonstrating "scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134 (9th Cir. 2025). In addition, to plead loss causation, Plaintiff must allege facts demonstrating that the revelation of some previously concealed truth "render[ed] some aspect of the defendant's prior statement false or misleading." *Hadian v. Fate Therapeutics, Inc.*, 2025 WL 2696995, at *21 (S.D. Cal. Sept. 22, 2025).

## IV. ARGUMENT

### A. Plaintiff Fails to Plead That Any Challenged Statement Was False or Misleading

Plaintiff challenges sixteen statements about (1) channel inventory levels; (2) factors affecting financial performance; and (3) competition risk disclosures. *See* ¶¶ 68-104; Appx. A. Each challenge fails. *First*, Plaintiff fails to allege particularized facts showing any statement was false or misleading when made. *Second*, most statements are inactionable opinions. *Third*, many challenged statements are also forward-looking statements protected by the PSLRA's safe harbor.

### 1. Plaintiff Fails to Plead Contemporaneous Falsity

As a threshold matter, Plaintiff copies and pastes the same generic reason for why nearly every challenged statement is false: "in addition to macroeconomic and/or industry headwinds, by mid-2024, Telsa's [sic] introduction of PW3 materially eroded Enphase's market share and sales, creating a material glut of channel inventory no later than the start of the Class Period," such that "Defendants' claim that channel inventory was normal at eight to ten weeks" was misleading. ¶¶ 70, 72, 74, 76, 78, 83, 85, 87, 89, 91, 96, 99, 102; *see also* ¶¶ 80, 93, 104 (same theory for risk disclosures). But the PSLRA requires Plaintiff to plead, as to each statement, "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Repeating "the same tangential factual allegations to claim falsity" does not suffice. *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276-78 (N.D. Cal. 2019). Plaintiff's copied-and-pasted theory often makes no sense: it attacks a purported "claim" "that channel inventory was normal at eight to ten weeks" in statements that do not discuss channel inventory at all. *See* ¶¶ 73-74, 88-89. Plaintiff's Amended Complaint should be dismissed on this basis alone.

In any event, no well-pleaded facts show that PW3 "materially eroded Enphase's market share and sales" or "creat[ed] a material glut of channel inventory." ¶ 70. Plaintiff does not allege Enphase's market share at any time (much less how it changed relative to PW3), nor that channel inventory was outside the disclosed "normal" range (much less what "normal" should have been). She does not challenge Enphase's reported financial metrics *at all*, and those metrics showed increasing demand and steady channel inventory. Plaintiff relies instead on a single former employee and a hindsight reading of the alleged corrective disclosure. *See* ¶¶ 59-66, 105-08. Neither suffices.

*First*, FE1, a regional salesperson in Florida, is not described "with sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). FE1 claims that "by late 2024, sales of Tesla's PW3 caused demand for Enphase's batteries dropped sharply [sic], possibly by as much as 80%," and that the decline "worsened" in 2025, based on anecdotal discussions with unidentified distributors and installers in their only region (Florida) and unspecified "distributor data." ¶¶ 60-62, 65. These are

the sort of "vague and incomplete statement[s]" by a "low-level employee" that "hardly support[]" fraud. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014). Plaintiff does not say whether FE1's account concerns Florida or the whole Company; if the former, it says nothing about Enphase more broadly, if the latter, Plaintiff fails to explain how a regional salesperson would know. *Id.* (rejecting claim by Florida salesperson on this basis).

FE1's reliance on unidentified sources and unspecified data makes their claims more deficient still. *Id.*; *Zucco*, 552 F.3d at 996 (rejecting "unreliable hearsay"); *In re Zumiez Inc. Sec. Litig.*, 2009 WL 901934, at *9 (W.D. Wash. Mar. 30, 2009) (rejecting "anecdotal statements"). FE1's attendance at undated internal meetings adds nothing. The only information allegedly discussed at these meetings was that Enphase viewed Tesla as its largest competitor and that Tesla attracted relatively greater demand. ¶ 64. But that is consistent with Enphase's disclosures that Tesla was a competitor. Plaintiff identifies no specific "information obtained at these meetings" to suggest Tesla had captured market share from Enphase or caused an excess of channel inventory. *Zumiez*, 2009 WL 901934, at *8. This Court has rejected substantially the same reliance on former Enphase employees just a few months ago. *Hansainvest Hanseatische Inv.-GMBH v. Enphase Energy, Inc.*, 2026 WL 2908618, at *7-9 (N.D. Cal. Sept. 28, 2026).

FE1's claim that battery demand declined fails for a second reason: Enphase's undisputed financial results flatly contradict it. *See In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *5 (N.D. Cal. Apr. 11, 2025) (rejecting FE allegations "inconsistent with reality"). Enphase reported that battery shipments more than doubled over 2024 and reached a record in the third quarter of 2025, while Enphase met guidance and grew revenues throughout the Class Period. *See supra* § II.C; Ex. 2 at 31; Ex. 7 at 1. Plaintiff offers no explanation for how demand could have fallen by 80% (or more) as FE1 claims, while Enphase continued to meet previously issued guidance and increase its revenues throughout the Class Period. *See Zucco*, 552 F.3d at 999 (rejecting CW statement "contradicted by readily available physical evidence"); *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (rejecting confidential former employee statement contradicting "undisputed disclosures").

*Second*, the October 2025 "corrective" disclosure was no "admission" that "channel inventory was materially too high." ¶ 107. Enphase reported channel inventory in the same "normal" to "slightly elevated" range previously disclosed, and explained that it would realign inventory because of the upcoming expiration of federal solar tax credits. ¶¶ 106-07; *infra* § IV.C.

In addition to the failures in the only purported support for Plaintiff's falsity theory, each category of alleged misstatement fails for additional reasons.

*Channel Inventory Statements (Stmts. 1, 2, 7, 9, 13, 15)*. Plaintiff challenges several statements describing Enphase's channel inventory as "normal," "slightly elevated," or similar. Stmts. 1, 2, 7, 9, 13, 15. But Plaintiff concedes that Mr. Kothandaraman repeatedly explained that "normal" meant enough inventory to last eight to ten weeks at existing sell-through rates, ¶¶ 4-5, 33, 36, 90, 101, and alleges no facts suggesting channel inventory fell outside the disclosed ranges.

Plaintiff thus disputes only the adjectives used ("normal" to "slightly elevated"), based on an unsupported and unexplained belief that "normal" should mean something other than eight-to-ten weeks. *See* ¶ 5. But Plaintiff never explains what channel inventory levels *should* have been and her subjective "disagreement" does not adequately plead falsity. *Rigel*, 697 F.3d at 879. In any event, "normal" and "slightly elevated" are quintessential inactionable puffery. ¶¶ 69, 86, 95, 106; *see Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *6 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021); *Intuitive*, 759 F.3d at 1060 (rejecting "subjective assessment" on which investors do not rely, particularly where "the market already knew" all relevant (and undisputed) underlying data). Courts in this circuit routinely reject similar claims based on descriptors of precisely the same metric—channel inventory. *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 928-29 (N.D. Cal. 2017) (dismissing statement that channel inventory "look[s] healthy"); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1149 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669 (9th Cir. 2020) ("good shape"); *Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1231 (W.D. Wash. 2014), *aff'd*, 692 F. App'x 491 (9th Cir. 2017) ("vague" description of "inventory levels as being 'in a healthy range'" inactionable).

*Competition and Macroeconomic Environment (Stmts. 3-5, 7-8, 10-11, 14)*. Plaintiff fails to allege any fact suggesting Enphase omitted any information about Tesla competition that would

undermine any challenged statement. Plaintiff concedes that the factors Enphase cited as impacting its business—including a weakening solar market, the loss of the 25D tax credit, NEM changes, and higher interest rates—did affect the Company. ¶ 66. And Enphase disclosed that Tesla was a competitor, flagging the threat posed "specifically from Tesla," ¶ 80, while analysts publicly discussed PW3's "substantial and widespread" demand, ¶¶ 53-55. Defendants cannot be held liable for securities fraud when they "disclosed the very risk [P]laintiff alleges they concealed." *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *11 (N.D. Cal. Nov. 23, 2021). Nor does Plaintiff plead any particularized fact about Enphase's market share or how it changed such that the challenged statements about competition and its supposed impact on inventory levels could be false. *See Hansainvest*, 2026 WL 2908618, at *8 (rejecting falsity based on conclusory and unsubstantiated allegations of demand decline).

Several statements also have nothing to do with Tesla: three discuss the slowdown in "late 2023 and the first half of 2024," before PW3 allegedly affected sales, Stmts. 4, 5, 7; ¶¶ 70, 75, and in another Mr. Kothandaraman expressly declined to "comment on competition," Stmt. 3. A statement that "neither stated nor implied anything" about a topic cannot mislead by omitting it. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819, at *9 (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015) (statement that expressly excluded discussion of particular topic not misleading for omitting information about that topic).

<u>*Risk Warnings (Stmts. 6, 12, 16)*</u>. Enphase's risk warnings identified Tesla and warned competition could decrease revenue and erode market share. *See* ¶ 79. Because Plaintiff pleads no facts showing those risks "had already come to fruition," *supra* § IV.A.1, the warnings neither violated Item 303 of Regulation S-K nor were misleading. *Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *7 (N.D. Cal. Sept. 30, 2024), *aff'd sub nom Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla, Inc.*, 2025 WL 3459471 (9th Cir. Dec. 2, 2025); *see also Macquarie Infrastructure Corp. v. Moab Partners*, L.P., 601 U.S. 257, 260 (2024) (a "failure to disclose information required by Item 303" does not support liability under Section 10(b) unless it renders a statement misleading).

**2. Nearly All of the Challenged Statements Are Inactionable Opinions**

All but two of the challenged statements (Stmts. 1-4, 6-7, 9-16) are inactionable opinions reflecting management's "inherently subjective" judgment. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Six (Stmts. 4, 6, 11, 12, 14, 16) expressly describe what Defendants "believe," "think," or "expect." *Id.* at 187; *compare* ¶ 75 (describing "expect[ed]" demand increase); *Hansainvest*, 2026 WL 2908618, at *6 (statement that defendant "expect[ed] sell-through to continuously go up" is an opinion).[3] Defendants' assessments of Enphase's competitive positioning and response to the macroeconomic environment (Stmts. 3, 10) are likewise opinions, even if they do not expressly include the words "I think" or "I believe," *Hansainvest*, 2026 WL 2908618, at *5-6, as are their views on what "normal" channel inventory is (Stmts. 1-2, 7, 9, 13, 15), *Waterford*, 321 F. Supp. 3d at 1149 (statement that channel inventory is in "good shape" is "subjective").

An opinion is actionable only if Plaintiff pleads particularized facts showing (1) the speaker did not subjectively believe it *and* it is objectively untrue; (2) it embeds false statements of material fact; or (3) it omits facts about the speaker's basis that render it misleading. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017). Plaintiff pleads none of these.

Plaintiff alleges no fact showing that eight to ten weeks is objectively not "normal" or that any Defendant did not believe it was, nor any fact suggesting Defendants disbelieved their views on competitive positioning or the macroeconomic environment. *See id.* at 616-17. A single regional employee's view that PW3 made Enphase's products "more difficult" to sell in Florida says nothing about subjective or objective falsity. *See supra* § IV.A.1. Nor do the challenged opinions embed false facts or omit facts about their basis: investors were told what "normal" meant, and Defendants disclosed Tesla competition and macroeconomic factors. *See supra* § IV.A.1; *Hansainvest*, 2026 WL 2908618, at *7-8 (rejecting falsity where allegations did not support inference "that demand for Enphase's products was declining materially").

---

[3] The challenged risk factors (Stmts. 6, 12, 16) were prefaced with a statement that the risks described therein were those "believe[d]" to be material, and were "not the only ones we face." Ex. 1 at 16.

### 3. Plaintiff's Challenge to Forward-Looking Statements Fails

Statements 3, 4, 6, 11, 12, 14, and 16 are also protected by the PSLRA's safe harbor, which covers forward-looking statements that are either (1) identified as such and accompanied by meaningful cautionary language, or (2) not made with "actual knowledge" of falsity. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). These statements reflect expectations that headwinds "could continue to have an adverse effect in 2025" (Stmt. 4), about future demand (Stmt. 14), and that competition "could negatively impact our business" (Stmt. 6). ¶¶ 75, 79, 98. Both prongs of the safe harbor apply here.

*First*, Enphase identified statements about "future financial performance," including those using words like "could" and "expects," as forward-looking, and warned that "actual results or experience could differ significantly." Ex. 1 at 4; Ex. 2 at 29; Ex. 3 at 30; Ex. 11 at 3; Ex. 12 at 3; Ex. 13 at 2. Enphase also specifically warned that competition could cause it to "lose sales or market share" and that inaccurate demand forecasts could cause "excess product inventory." ¶¶ 41, 46, 79; Ex. 1 at 6, 19, 35. These disclosures "specifically warn against the very allegations advanced by" Plaintiff. *Fastly*, 2021 WL 5494249, at *13.

*Second*, Plaintiff has not alleged facts "in great detail" showing Defendants made the statements with "actual knowledge that they were false." *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1069 (N.D. Cal. 2001). Indeed, Plaintiff does not plead scienter, *see infra* § IV.B, much less facts meeting the "stricter standard of *actual* knowledge of falsity." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002); *see infra* § IV.B.

## B. Plaintiff Fails to Plead Any Inference of Scienter, Much Less the Requisite Strong Inference

Plaintiff's claims also fail because she fails to plead particularized facts giving rise to a "strong inference" that any Defendant acted with an "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319; 15 U.S.C. § 78u-4(b)(2)(A). Plaintiff must plead facts showing that each Defendant engaged in an "extreme departure from the standards of ordinary care" that "presents a danger of misleading . . . either known to the defendant or . . . so obvious that the actor must have been aware of it." *Zucco*, 552 F.3d at 991. The deliberate recklessness portion of the standard is

"actually much closer to one of intent." *NVIDIA*, 768 F.3d at 1053. A complaint clears this bar "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Prodanova*, 993 F.3d at 1106. And unlike on an ordinary motion to dismiss, the Court "must consider all reasonable inferences," "including inferences unfavorable to the plaintiffs." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). The Amended Complaint alleges no motive, no internal report or data contradicting any public statement, no witness who ever spoke with any Defendant, and no other traditional hallmark of scienter.

**1. Plaintiff Alleges No Motive for Any Defendant to Deceive Investors**

Plaintiff alleges no insider stock sales or any other effort by any Defendant to profit from the supposed fraud, an "immediate first-level problem." *Nguyen*, 962 F.3d at 415-16; *Prodanova*, 993 F.3d at 1107 (holding securities fraud motive is ordinarily "clear" including insiders "selling shares before the company discloses negative information"). That failure alone "supports an inference of no scienter," *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1011 (N.D. Cal. 2017), "significantly undermine[s]" Plaintiff's theory of fraud, *Bodri*, 252 F. Supp. 3d at 933, and "makes it much less likely that a plaintiff can show a strong inference of scienter," *Prodanova*, 993 F.3d at 1108. Indeed, Defendants supposedly concealed the impact of disclosed Tesla competition on market share and inventory levels for over a year—while publicly reporting the very sales and channel inventory data that should have exposed it—and gained nothing for their trouble. *Nguyen*, 962 F.3d at 415 (holding similar theory "does not make a whole lot of sense").

**2. Plaintiff's Circumstantial Allegations Do Not Support Scienter Either**

Failing to plead any motive, Plaintiff must plead "compelling and particularized facts" showing Defendants knew, or recklessly disregarded, that Tesla competition had eroded market share and caused excess inventory when each challenged statement was made. *Prodanova*, 993 F.3d at 1108. Her three theories do not come close.

*<u>Inventory Monitoring</u>*. Plaintiff alleges Mr. Kothandaraman "monitored" sell-through and channel inventory at meetings, ¶¶ 34, 36, 42, but identifies no data shown at any meeting that contradicted his statements, and does not claim any reported figure was false. Such generalized

access to data is insufficient. *See Lipton*, 284 F.3d at 1036. And much of this alleged "monitoring" predates the Class Period and so cannot support scienter. ¶¶ 28-40; *see Metzler*, 540 F.3d at 1066 (9th Cir. 2008) (requiring "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made").

*FE1*. FE1's supposed beliefs regarding battery demand are irrelevant to the scienter inquiry because FE1 never claims to have interacted with Mr. Kothandaraman, and allegations of Defendants' mere "attendance at meetings" are insufficient in the absence of well-plead facts showing Defendants were aware of data contradicting their statements. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008); *Scheller*, 450 F. Supp. 3d at 1040 (attendance at quarterly meetings insufficient). Moreover, FE1 alleges no fact suggesting any Defendant "shared [FE1's] gloomy view" of the business. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021).

*Q3 2025 Earnings Announcement*. Enphase's October 2025 plan to realign *future* inventory ahead of a tax-credit-driven decline *in 2026* does not show Defendants believed *past* inventory levels were misstated, particularly where Mr. Kothandaraman reaffirmed the eight-to-ten week "rule of thumb" and announced results that *met* Enphase's guidance and predicted a strong end to fiscal year 2025. Ex. 14 at 13; *see SolarCity*, 274 F. Supp. 3d at 1002 (change in reporting "does not show that the previous reporting . . . was false or misleading").

**3. No Scienter for Ms. Yang**

The Amended Complaint's allegations as to Ms. Yang are particularly deficient and fall woefully short of pleading any fact (much less particularized) regarding her purported scienter. Ms. Yang appears by name in just two paragraphs: one identifying her position and one defining "Individual Defendants" and "Defendants." ¶¶ 15-16. Plaintiff does not attribute any statement to Ms. Yang other than the boilerplate assertion that she (only as a part of the group "Individual Defendants") "possessed the power and authority to control" Enphase's public communications. ¶ 17. That is insufficient. *See Prodanova*, 993 F.3d at 1109 (rejecting conclusory "power and authority" allegations).

### 4. The Nonfraudulent Inference Is Far More Compelling

Viewed holistically, Plaintiff's theory "does not make a whole lot of sense." *Nguyen*, 962 F.3d at 415. And as the Ninth Circuit has recently instructed, where the challenged statements are not alleged to be "flagrantly false" (as here), Plaintiff's scienter burden is all the more difficult. *Sneed*, 147 F.4th at 1134 ("Showing scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent alternative explanation becomes more likely."); *Zucco*, 552 F.3d at 991 ("reporting false information will only be indicative of scienter where the falsity is patently obvious"). According to Plaintiff, Defendants hid slumping demand caused by (disclosed) competition from Tesla for well over a year, apparently knowing that competition would cause supposedly excess inventory that would be revealed to the market but all the while never attempting to capitalize on this supposed fraud. ¶ 70. That theory does not hold water.

Instead, the far more plausible inference is simple: Defendants believed the undisputed financial results they released, which showed growing demand and consistent channel inventory levels. And when Defendants determined that the expiration of federal solar tax credits would impact future demand in 2026, they disclosed updated plans to prepare for that likelihood to investors. That is responsible transparency, not fraud.

## C. Plaintiff Fails to Plead Loss Causation

Plaintiff also fails to plead loss causation—*i.e.*, that the alleged misrepresentation caused her economic loss. *See Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017). Her sole alleged corrective disclosure, the October 28, 2025 third-quarter announcement, ¶¶ 105-08, did not "reveal 'new facts' that, taken as true, render some aspect of the defendant's prior statement false or misleading." *Hadian*, 2025 WL 2696995, at *21.

Enphase reported revenue ***beating its previously issued guidance***, increasing sell-through, and channel inventory levels within the same normal-to-slightly-elevated ranges previously disclosed. *Compare* ¶¶ 105-06, *with* ¶ 95; Ex. 14 at 4. Its lower 2026 outlook and plan to "destock the channel" were expressly tied to the ***future*** expiration of the 25D tax credit. ¶ 106; Ex. 14 at 6-

7, 13. That does not correct anything about the past. *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *18 (N.D. Cal. Feb. 20, 2024).

As to prior periods, the announcement revealed only *positive* information. *See Metzler*, 540 F.3d at 1065 (rejecting corrective disclosure where information revealed contradicted fraudulent inference suggested by plaintiffs). In any event, Plaintiff concedes the Q3 2025 announcement reveals nothing about any impact from competition with Tesla. *See* ¶ 107 (alleging Defendants "continued to omit that loss of market share to Tesla's PW3 was a material cause of [the] inventory glut"). And the disclosed dynamics (rising demand through 2025, then a decline after tax credits expired in 2026) are irreconcilable with Plaintiff's theory that Tesla had been depressing demand since "mid-2024." ¶ 70. Because the announcement revealed no "new facts" that "render some aspect of [Defendants'] prior statement[s] false or misleading," Plaintiff fails to plead loss causation. *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024); *Loos v. Immersion Corp.*, 762 F.3d 880, 888 (9th Cir. 2014) (the market "must have learned of and reacted to the company's fraudulent practices").

**D. Plaintiff Fails to Plead a Section 20(a) Claim**

Because Plaintiff fails to state a Section 10(b) claim, her Section 20(a) claim also fails. *See Cutera*, 610 F.3d at 1113 n.6. It independently fails because she offers only "bare assertions" of control, particularly as to Ms. Yang. *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1071 (N.D. Cal. 2012).

## V. CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: November 9, 2026

LATHAM & WATKINS LLP

/s/ *Daniel R. Gherardi*

Daniel R. Gherardi (Bar No. 317771)
*daniel.gherardi@lw.com*
801 Jefferson Avenue, Suite 300
Redwood City, CA 94063
Telephone: +1.650.328.4600

Colleen C. Smith (Bar No. 231216)
*colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.5400

*Attorneys for Defendants Enphase Energy, Inc., Badrinarayanan Kothandaraman, and Mandy Yang*